1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                            EASTERN DISTRICT OF CALIFORNIA

10

11    COLIN M. RANDOLPH,                        Case No. 1:20-cv-01434-JLT-SKO (PC)

12                    Plaintiff,                **FINDINGS AND RECOMMENDATIONS
                                                TO GRANT DEFENDANTS' MOTION FOR
13            v.                                SUMMARY JUDGMENT**

14    HALL, et al.,                             (Doc. 23)

15                    Defendants.               **14-DAY OBJECTION PERIOD**

16

17            Colin M. Randolph is proceeding pro se and *in forma pauperis* in this civil rights action

18    pursuant to 42 U.S.C. § 1983. This action proceeds on Plaintiff's First Amendment retaliation

19    claims against Defendants Hall and Isais.

20        **I.       INTRODUCTION**

21            Defendants filed a motion for summary judgment on September 11, 2023. (Doc. 23.) On

22    October 5, 2023, Plaintiff filed a document titled "Plaintiff's Objection to Defendants Motion for

23    Summary Judgement; Request for Appointment of Counsel; and to Take Judicial Notice of

24    Exhibits B, E and F and Directed Verdict in Favor of Plaintiff."[1] (Doc. 27.) Defendants filed a

25    reply on November 6, 2023. (Doc. 33.) On November 22, 2023, Plaintiff filed a document titled

26    "Permission to File a Response/Denial to (D)efendants 'Reply' in Support of (D) Motion for

27

28    _____
      [1] Plaintiff's motion for the appointment of counsel was resolved separately. (*See* Docs. 28 [order denying]
      & 32 [denying reconsideration].)

Summary Judgment; (D) Introduce False and Doctored Declatory Evidence onto this Honorable Court 'again.'" (Doc. 34.)

## II.  PLAINTIFF'S ALLEGATIONS

The relevant allegations are quoted from the Court's Second Screening Order issued November 7, 2022:

> On July 18, 2018, Plaintiff filed a complaint against correctional officers at Kern Valley State Prison for the alleged use of excessive force. (Doc. 12 at 4.) Plaintiff alleges that on March 10, 2019, he "was unlawfully placed in administrative segregation . . . by unknown staff members for unknown reason[s]." (*Id.*) An unidentified staff member informed Plaintiff "that his property was being searched and taken, that his legal material would be confiscated in reprisal for civil case litigation [case no. 1:18-cv-00968], excessive force claim." (*Id.*) All of Plaintiff's "discovery, research, and work product specific to [his] excessive force complaint" was confiscated by Correctional Officers Hall and Isais and Plaintiff challenged the action through prison administrative proceedings. (*Id.* at 4-10.)
>
> Plaintiff alleges the materials were not returned, "disrupting [Plaintiff's] ability to properly prepare for an litigate civil case no. 1:18-cv-00968 on meritous [sic] issues that legal material/miscellaneous papers confiscated and not returned would've provided." (*Id.* at 10.)

(Doc. 15 at 3-4.)

## III.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears

2

the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita,* 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v.*

1   *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

2   Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

3   show that there is some metaphysical doubt as to the material facts.... Where the record taken as a

4   whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

5   issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

6        Summary judgment should be entered against a party who fails to make a showing

7   sufficient to establish the existence of an element essential to that party's case, and on which that

8   party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of

9   proof concerning an essential element of the nonmoving party's case necessarily renders all other

10  facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted,

11  "so long as whatever is before the district court demonstrates that the standard for the entry of

12  summary judgment … is satisfied." *Id.* at 323.

13       In judging the evidence at the summary judgment stage, the court may not make

14  credibility determinations or weigh conflicting evidence. *Soremekun v. Thrifty Payless, Inc.*, 509

15  F.3d 978, 984 (9th Cir. 2007) (quotation marks & citation omitted). It must draw all inferences in

16  the light most favorable to the nonmoving party and determine whether a genuine issue of

17  material fact precludes entry of judgment. *Comite de Jornaleros de Redondo Beach v. City of

18  Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks & citation omitted). The

19  court determines only whether there is a genuine issue for trial. *Thomas v. Ponder*, 611 F.3d

20  1144, 1150 (9th Cir. 2010) (quotation marks & citations omitted).

21                    **B. Retaliation**

22       The Ninth Circuit Court of Appeals has held that, within the prison context, a First

23  Amendment retaliation claim has five essential elements: (1) An assertion that a state actor took

24  some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and

25  that such action (4) chilled the inmate's exercise of his First Amendment rights and (5) the action

26  did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559,

27  567-68 (9th Cir. 2005); *see also Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

28  Federal courts "should 'afford appropriate deference and flexibility' to prison officials [when

1    evaluating the] proffered legitimate penological reasons for conduct alleged to be retaliatory."

2    *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.1995). Preserving institutional order, discipline and

3    security are legitimate penological goals which, if they provide the motivation for an official act

4    taken, will defeat a claim of retaliation. *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994);

5    *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first

6    amendment rights must be analyzed in terms of the legitimate policies and goals of the

7    correctional institution in the preservation of internal order and discipline, maintenance of

8    institutional security, and rehabilitation of prisoners"). Plaintiff bears the burden of "pleading and

9    proving the absence of legitimate correctional goals" for the constitutional harm he claims. *Pratt,*

10    at 806.

11           To prove the second element, retaliatory motive, plaintiff must show that his protected

12    activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct.

13    *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or

14    circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not

15    sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); *Wood v. Yordy*, 753

16    F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's

17    protected conduct, circumstantial evidence of motive may include: (1) proximity in time between

18    the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the

19    protected conduct; and (3) other evidence showing that defendant's reasons for the challenged

20    action were false or pretextual. *McCollum*, 647 F.3d at 882.

21    **IV.    DEFENDANTS' STATEMENT OF UNDISPUTED FACTS**

22    Defendants submit the following undisputed facts (UDF):

23    1.  On March 10, 2019, an individual, Arleta Brigham, came to the prison to visit with

24        Plaintiff.

25    2.  Ms. Brigham was on Plaintiff's approved visitor list.

26    3.  Ms. Brigham came into the prison premises with substances that were suspected of

27        being, and tested presumptive positive for, Marijuana.

28    4.  Plaintiff was placed in the Administrative Segregation Unit ("ASU") on suspicion of

Conspiracy to Introduce a Controlled Substance in an Institution for Distribution.

5. Arleta Brigham is listed among Plaintiff's relatives and associates as his girlfriend.

6. In the years 2018 and 2019, Ms. Brigham visited Plaintiff at KVSP over 50 times.

7. The investigation did not produce sufficient evidence that Plaintiff had conspired to bring drugs into the prison.

8. Plaintiff was moved from ASU back into general population.

9. From May 17, 2018, up to March 10, 2019, Plaintiff was housed in Facility B of KVSP, building 2, cell no. 209.

10. On March 10, 2019, Plaintiff was moved for a short period of time to Facility B, building 1, cell no. 117.

11. Building 1 of Facility B was used as a temporary overflow for inmates on ASU status.

12. Plaintiff was then moved to Short Term Restricted Housing, Facility Z, building 1, cell [no]. 101.

13. Short Term Restricted Housing ("STRH") is similar to ASU but with the capacity to care for inmates with mental health issues.

14. On March 12, 2019, Plaintiff was moved to ASU in Facility Z, building 2, cell no. 104.

15. Subsequently, on March 14, 2019, Plaintiff was placed back into general population, Facility B, building 2, cell no. 110.

16. At the time of Plaintiff's placement in ASU, the following policies were in effect.

17. Pursuant to Department Operations Manual ("DOM") § 54030.13.2, when an inmate is placed on ASU status (subject to Administrative Segregation), his property shall be inventoried in accordance with § 54030.6.

18. DOM 54030.6 states that when an inmate is moved to be retained elsewhere and the property cannot be secured, correctional staff will assume responsibility of the inmate's property.

19. Usually, within 24 hours of notification of the inmate being retained elsewhere, the property will be inventoried, packaged, and placed in a secure location.

20. Under DOM § 54030.5, CDC Form 1083 Inmate Property Inventory ("1083 form") is used when correctional staff inventory an inmate's property.

21. When an inmate is removed from his cell to be retained elsewhere, such as ASU, his property will be inventoried.

22. When correctional staff inventory an inmate's property, all property will be documented on a 1083 form, boxed up and moved to the inmate's new housing.

23. If the inmate has been moved to ASU, an Administrative Segregation Officer will review the inmate's inventoried property to make sure it is all appropriate for ASU housing.

24. As this process takes time, an inmate moved only temporarily to ASU for a few days may not receive his property again until back in a general population cell.

25. When inventorying an inmate's property, if correctional staff finds contraband or property not belonging to the inmate, that property will be confiscated.

26. When property is confiscated, it is documented on forms other than the 1083 form, such as a holding cell receipt.

27. Inmates are allowed to keep in their cell legal documents from active cases.

28. Legal documents in inmates' cells that are from inactive cases will be boxed up and stored for the inmate.

29. On or about March 17, 2019, Plaintiff filed appeal no. KVSP-O-19-01065.

30. In the appeal, Plaintiff alleged that he was missing legal documents, including documents from his excessive force case, no. 1:18-cv-00968.

31. During the investigation for the first-level response to Plaintiff's appeal, Plaintiff was informed that Defendants Hall and Isais were responsible for the inventorying of his property.

32. As part of the first-level investigation, Correctional Sergeant J. Hernandez interviewed Defendant Hall.

33. Hall told Hernandez that, while inventorying Plaintiff's property, he remembered miscellaneous papers but nothing specific to legal documents, and Plaintiff signed the

7

inventory form acknowledging that all his property was accounted for.

34. The second-level response investigation was conducted by Correctional Lieutenant R. Velasco.

35. The second-level response affirmed the findings of the first-level response; it was found that all staff "followed the policies and procedures before, during, and after the inventorying of [Plaintiff's] property."

36. The third-level response found that KVSP staff were fully compliant with Title 15 and that there was no liability on the institution's part for any lost property.

37. In March of 2019, Defendants Hall and Isais were Correctional Officers at KVSP.

38. Neither Defendant has an independent recollection of inventorying Plaintiff's property on March 10, 2019.

39. When inventorying an inmate's property, Defendants Hall and Isais always properly document the inmate's property on the appropriate form, the 1083 form.

40. Defendants Hall and Isais have never forged an inmate's signature on a 1083 form.

41. Neither Defendant had any knowledge in March of 2019 of Plaintiff's civil lawsuit, case no. 1:18-cv-00968.

42. Neither Defendant has ever confiscated an inmate's legal material in retaliation for the inmate filing a lawsuit against CDCR employees.

43. Neither Defendant has ever been instructed to confiscate the legal material of an inmate in retaliation for the inmate filing a lawsuit against CDCR employees.

44. As correctional officers, neither Defendant had the power to have Plaintiff transferred into ASU.

45. Plaintiff filed his Complaint in case no. 1:18-cv-00968 on July 18, 2018.

46. The Court issued a Screening Order on June 7, 2019.

47. The Screening Order found claims of excessive force against C. Sandoval and V. Benavides cognizable.

48. The Screening Order also found cognizable a retaliation claim against C. Sandoval.

49. All other claims in the Complaint for case no. 1:18-cv-00968 were found non-

cognizable.

50. Plaintiff filed a First Amended Complaint on June 24, 2019.

51. Plaintiff filed a Motion for Leave to Supplement the First Amended Complaint on September 26, 2019.

52. The Court granted the Motion for Leave to Supplement the First Amended Complaint on October 2, 2019, and a Second Amended Complaint was filed on October 25, 2019.

53. The Court issued Findings and Recommendations ("F&R") for the Second Amendment Complaint on February 19, 2020.

54. The F&R found once again that excessive force claims against C. Sandoval and V. Benavides were cognizable.

55. The F&R also found that retaliation claims against C. Sandoval, V. Benavides, and R. Spiedell were cognizable.

56. The F&R found all other claims in the Second Amended Complaint non-cognizable.

57. Plaintiff had included a "Supplemented Complaint" section to the Second Amended Complaint.

58. The "Supplemented Complaint" attempted to join several claims, including the one that is the basis of the instant case, to 1:18-cv-00968.

59. The F&R recommended the "Supplemented Complaint" be dismissed as improperly joined.

60. The F&R was adopted in full on May 19, 2020.

61. On February 2, 2021, Defendants in 1:18-cv-00968 filed a Motion for Summary Judgment for failure to exhaust administrative remedies as well as a Motion to Stay Discovery.

62. The Motion to Stay Discovery was granted.

63. In case no. 1:18-cv-00968, there has not yet been a ruling on the Motion for Summary Judgement.

(Doc. 23-6 at 2-7 [hereafter "UDF"].)

1       Plaintiff responded to Defendants' UDFs in his opposition. He provides lengthy

2 qualifications to all responses, [2] including subsequent or partial denials where the UDF did not

3 include language he purports to deny. (*See* Doc. 27 at 5-20.) As a matter of economy and

4 efficiency, the Court will not summarize the responses and will instead discuss them in

5 conjunction with its analysis.

6      **V.**     **EVIDENTIARY MATTERS**

7       **A.  Defendants' Request for Judicial Notice**

8       Defendants ask this Court to take judicial notice of the docket and certain pleadings and

9 orders filed in *Randolph v. Sandoval, et al.*, this Court's case number 1:18-cv-00968-JLT-BAM.

10 (Doc. 23-8.) These pleadings consist of Plaintiff's complaint filed July 18, 2018, the Court's

11 screening order issued June 7, 2019; the first amended complaint filed June 24, 20219; a motion

12 to supplement the first amended complaint filed September 26, 2019; the order granting motion to

13 amend complaint issued October 2, 2019; the Findings and Recommendations issued February

14 19, 2020; the Order adopting those findings in full issued May 19, 2020; and the motion for

15 summary judgment filed by defendants on February 2, 2021. (*Id.* at 1-2.)

16       A court may take judicial notice of facts "not subject to reasonable dispute" because they

17 are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of

18 accurate and ready determination by resort to sources whose accuracy cannot reasonably be

19 questioned." Fed. R. Evid. 201. The docket and the existence of the pleadings and orders filed in

20 case number 1:18-cv-00968-JLT-BAM are not subject to reasonable dispute because they can be

21 "accurately and readily determined from sources whose accuracy cannot reasonably be

22 questioned." Accordingly, Defendants' request is granted. *See United States v. Wilson*, 631 F.2d

23 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases");

24 *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (courts "may take notice of proceedings in

25

---

26 [2] For example, regarding UDF No. 1, Plaintiff states: "(P) admits that on March 10, 2019, Arleta Brigham
came to Kern Valley State Prison to visit Plaintiff, according to her sworn declaration of April 15, 2019;

27 but Plaintiff has no independent knowledge of that." (Doc. 27 at 5.) In response to UDF No. 20, Plaintiff
states: "(P) admits DOM 54030.5, CDC Form 1083 Property Inventory (1083 form) is used when

28 correctional staff inventories inmates property, (P) denys [sic] correctional staff followed these procedures
on 3/10/2019, as instructed to by DOM 54030.5." (*Id.* at 10.)

1    other courts, both within and without the federal judicial system, if those proceedings have a

2    direct relation to matters at issue"); *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011) (court

3    "may take notice of proceedings in other courts"); *Harris v. County of Orange*, 682 F.3d 1126,

4    1131–32 (9th Cir. 2012) (court may take judicial notice of "documents on file in federal or state

5    courts"). The pleadings in this Court's case number 1:18-cv-00968 also have a direct relation to

6    the matter at issue here. *See United States ex. rel. Robinson Rancheria Citizens Counsel v.*

7    *Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citations & internal quotation marks omitted).

8    Defendants' request for judicial notice of the docket and the filings in case number 1:18-cv-00968

9    is granted.

10                                   **B.  Plaintiff's Request for Judicial Notice**

11           Plaintiff asks this Court to take judicial notice of "factual documentation" pursuant to

12    Rule "201(b)(c)(2)" of the Federal Rules of Evidence, including the Declaration of B. Hancock in

13    support of Defendants' motion for summary judgment[3] and documents maintained in the

14    Strategic Offender Management System (SOMS). (Doc. 27 at 38-42.)  He contends the

15    declarations or documents are fraudulent when compared to other documents, and requests

16    judicial notice of certain documents due to their purportedly fraudulent content.

17           The Court may only take judicial notice of facts not subject to reasonable dispute. Fed. R.

18    Evid. 201(b). *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (a

19    court cannot take judicial notice of disputed facts in public records); *Wilkins v. Heslop*, No. 2:20-

20    cv-01622 DJC DB P, 2024 WL 1636660, at *6 (E.D. Cal. Apr. 16, 2024) (denying plaintiff's

21    request to take judicial notice and stating "[n]either plaintiff's staff assault complaint nor the

22    Litigation Coordinator statement are judicially noticeable for their contents"). It is improper for a

23    court to take judicial notice of the veracity of a public document's contents when the parties

24    dispute the meaning and truth of the contents. *Lee v. City of L.A.*, 250 F.3d 668, 689-90 (9th Cir.

25    2011). Therefore, Plaintiff's request is denied because the contents of the documents are in

26    dispute.

27

28    ---
      [3] Judicial notice of this document is unnecessary. There is no need for the Court to take judicial notice of a document
      filed in support of the motion being decided herein.

C.  **Plaintiff's Sur-Reply**

Plaintiff filed a document titled "Permission to File a Response/Denial to (D)efendants 'Reply' in Support of (D) Motion for Summary Judgment. (D) Introduce False and Doctored Declatory Evidence Onto This Honorable Court 'Again'" on November 22, 2023 (Doc. 34).

This Court's Local Rules do not provide for the filing of a "Response/Denial" after a reply. Following the filing of a motion, an opposition or statement of non-opposition must be filed within 21 days, and any reply to the opposition must be filed within 14 days. Local Rule 230(*l*).  Plaintiff's filing does not fall under Local Rule 230(m).

Local Rule 230(m) states as follows:

> **Supplementary Material**. After a reply is filed, no additional memoranda, papers, or other materials may be filed without prior Court approval except:
>
> > (1) Objection to Reply Evidence. If new evidence has been submitted with the reply brief, the opposing party may file and serve, no later than seven (7) days after the reply is filed, an Objection to Reply Evidence stating its objections to the new evidence. The Objection to Reply Evidence may not include further argument on the motion.
> >
> > (2) Notice of Supplemental Authority. Any party may file a notice of supplemental authority to bring the Court's attention to a relevant judicial opinion issued after the date that party's opposition or reply was filed. The notice of supplemental authority may contain a citation to the new authority but may not contain additional argument on the motion.

Local Rule 230(m). Subdivision (2) does not apply as Plaintiff challenges evidence submitted in the reply pursuant to subdivision (1). Plaintiff's filing is dated November 14, 2023, and was served that same date. (*See* Doc. 34 at 10, 18.) It is untimely because it was not served within seven days of Defendants' reply. A review of Plaintiff's filing also reveals it contains impermissible additional argument. Plaintiff's document was therefore not considered.

VI.    **THE PARTIES' PLEADINGS**

*Defendants' Motion*

Defendants contend they neither placed Plaintiff in ASU, nor had the power to do so. (Doc. 23 at 14.) They assert Plaintiff's ASU placement, and the inventorying of his property,

1  served a legitimate penological interest. (*Id.* at 14-15.) Defendants further contend there is no

2  evidence that Defendants had knowledge of case number 1:18-cv-00968 (*id.* at 15-16) and

3  Plaintiff cannot establish that he has suffered an injury (*id.* at 16-19). Defendants also assert that

4  Plaintiff has not "suffered any harm in the form of prejudice" in case number 1:18-cv-00968. (*Id.*

5  at 19-21.)

6                     Summary of Defendants' Supporting Declarations

7          *Declaration of Jason Torres* (Doc. 23-1)

8          Defense counsel Jason Torres states he took Plaintiff's deposition at Kern Valley State

9  Prison on May 3, 2023, and attaches excerpts from the deposition transcript at Exhibit A to his

10  declaration. Torres states he has reviewed the docket in *Randolph v. Sandoval, et al.*, case number

11  1:18-cv-00968-JLT-BAM "for which Plaintiff alleges all discovery, research, and work product

12  was confiscated and never returned" and recounts specific filings found on the docket in 1:18-cv-

13  00968.

14          *Declaration of B. Hancock* (Doc. 23-2)

15          Hancock is employed as a Correctional Counselor II Specialist and is the Litigation

16  Coordinator at Kern Valley State Prison. At the request of defense counsel, Hancock reviewed

17  records pertaining to Plaintiff maintained in the SOMS and the Electronic Records Management

18  System (ERMS). Exhibits A through E concern Plaintiff's external movements, bed assignments,

19  temporary custody change, ASU placement notice, and the log for appeal log number KVSP-O-

20  19-01065.

21          *Declaration of J. Hernandez* (Doc. 23-3)

22          In April 2019, Correctional Lieutenant Hernandez completed his investigation into appeal

23  log number KVSP-O-19-01065. Hernandez recounts his interview with Defendant Hall and

24  provides relevant information regarding the DOM and inventorying property.

25          *Declaration of M. Isais* (Doc. 23-4)

26          Defendant Isais is a Correctional Officer at Kern Valley State Prison. Isais has no

27  independent recollection of inventorying Plaintiff's property on March 10, 2019, nor any definite

28  recollection of Plaintiff himself. Isais has no knowledge of any other litigation filed by Plaintiff,

1   no independent recollection of being interviewed about inventorying Plaintiff's property on

2   March 10, 2019, or of being asked about the incident before this lawsuit was filed. It is not within

3   Isais's power or responsibility to transfer an inmate to ASU or any type of restrictive housing.

4   Isais did not make, nor could Isais have made the decision to place Plaintiff in ASU.

5           *Declaration of T. Hall* (Doc. 23-5)

6           Defendant Hall is a Correctional Officer at Kern Valley State Prison. Hall has no

7   independent recollection of inventorying Plaintiff's property on March 10, 2019, or any

8   independent recollection of Plaintiff. Hall had no knowledge of any other litigation filed by

9   Plaintiff and no independent recollection of being interviewed about inventorying Plaintiff's

10  property on March 10, 2019. It is not within Hall's power or responsibility to transfer an inmate

11  to ASU. Hall neither made, nor could have made the decision to place Plaintiff in ASU.

12                          ***Plaintiff's Opposition***

13          Plaintiff asserts he "will state with specificity and support with documentary evidence and

14  declarations by Plaintiff and Arleta Brigham, and signed statement by Witness, Correctional

15  Officer Jorgenson that Defendants declarations are perjury and deliberate falsehoods and that

16  Defendants documentary evidence exhibits A, B, C and D are fraudulent and were not produced

17  from SOMS/ERMS and were doctored in order to commit fraud" upon the Court. (Doc. 27 at 2.)

18  He asks the Court to take judicial notice of his exhibits B, E and F. (*Id*.) Plaintiff requests "that a

19  directed verdict in Plaintiff's favor is ordered in the amount of $50,000.00 in punitive damages

20  and $50,000.00 in declaratory damages for Defendants retaliation and chilling effects in violation

21  of U.S.C. 1st Amendment." (*Id*.) Plaintiff requests appointment of counsel "so that schemes as

22  these are properly and thoroughly addressed in order to stop Defendants from their continued

23  retalitorial behavior and completed disregard for [his] constitutional rights." (*Id*. at 2-3.)

24          As noted in section IV, s*upra,* Plaintiff responded to Defendants' UDFs in his opposition

25  with lengthy qualifications to his individual responses. (*See* Doc. 27 at 5-20.) The responses will

26  be discussed in the Court's analysis.

27          Plaintiff's opposition is supported by the "Statement of Arletha Brigham" dated April 15,

28  2019. Brigham states the following occurred as she entered KVSP for a scheduled 10 a.m. visit:

                                                    14

(1) she was asked to step out of line because she smelled like marijuana according to correctional staff; (2) staff asked her if she had marijuana on her and she said no and she consented to an unclothed body search, which was negative for any marijuana or contraband; (3) she was asked to consent to a search of her vehicle by staff who suggested her car would be impounded and towed if consent was withheld and she ultimately agreed; (4) about 30 minutes later, staff told her they had found a half-smoked marijuana cigarette, rolling papers, and bags of a small amount of loose marijuana and she was shown four digital photos; (5) she explained to staff that she did not recall any of those items being in her vehicle, except for the half-smoked marijuana cigarette she told them was there, having been left in the vehicle the prior evening; (6) she told staff she has never brought marijuana into the prison or to a prisoner and did not do so on that date; (7) she sat in visitor processing for about three and a half hours and was then taken to an adjacent visiting hall where she remained for another two and a half hours before being read her rights. She asked to see photos of what was found in her car and to make a phone call using her cell phone. Ms. Brigham was then taken to the Kern County Jail, booked for being under the influence of drugs or alcohol, and was released 48 hours later; (8) her keys and phone were returned, she paid $142.75 in cab fare to retrieve her vehicle, found the interior torn apart, the seat backs removed, personal items removed from the glove box and console and thrown on the floor and seat, and trunk liners were pulled apart; (9) staff advised her she was no longer allowed on the grounds and her visiting privileges would be revoked, and she received a letter advising visits were suspended until December 3, 2022, and she could appeal by writing to the warden. (Doc. 27 at 22-23.) The notarized statement concludes: "This is a true and honest account of the day of my scheduled visit with Colin Randolph, T27441 on 3/10/2019 at Kern Valley State Prison to the best of my recollection." (*Id*. at 23.)

Plaintiff's opposition is supported by his own declaration: (1) On March 10, 2019, Defendants Hall and Isais removed him from B Facility, Block 2, cell 209 to ASU #1, cell # 101 on Facility Z; (2) Defendants explained that his property was being searched and taken and his legal material would be permanently confiscated due to his legal activities for filing excessive force claims against B Facility staff; (3) Defendants refused to provide him with a notice

concerning his ASU placement and did not provide a 1083 form or ask him to sign one; (4) Two hours later, Christina McPheeters told him cell 101 "was used to retaliate against inmates because it was designed to only house people with severe mental issues;" (5) McPheeters advised him "no property belonging to [him] was there in ASU #1, cell #101 for him;" (6) On March 11, 2019, Hammer told Plaintiff he was being punished for filing excessive force claims, his legal property would be destroyed, and his filing an excessive force lawsuit against B Facility staff presents a threat to safety and security; (7) Plaintiff attended the ICC hearing, stating he knew nothing of the incident with his visitor and "it is physically impossible to find a total package weight of 2.0 (TPW) and locate 3.3 grams net weight from that package"; (8) On March 15, 2019, Jorgenson provided him with a copy Form 1083 but he had not signed the form and the property list was inaccurate; (9) The form did not include his legal property; (10) On March 17, 2019, he filed appeal log number 19-01065; (11) Plaintiff learned that the unknown staff persons were Hall and Isais; (12) On April 17, 2019, Jorgenson provided Plaintiff with a "signed statement memorializing the circumstances by which he gave [Plaintiff] the original copy of 1083 form that was not procedurally filled out, lacking any correctional staff's identities and signed with a fraudulent signature [Plaintiff] did not make;" (13) Plaintiff appealed to the second level; (14) During his interview with Velasco Plaintiff provided Jorgenson's statement; (15) Plaintiff also advised Velasco he did not signed the 1083 form and that Defendants were retaliating against him for filing the excessive force lawsuit; (16) Plaintiff appealed to the third level. The third level response did not indicate "under section: Interview/Effective Communication" that Velasco's interview with Plaintiff was considered in its "final findings or decision," violating his due process rights. (*See* Doc. 27 at 25-34.)

Plaintiff includes a section titled "Plaintiff's Expansion of Defendants Deposition of (P)." (Doc. 27 at 34.) Plaintiff states he "recalls plainly and with particularity the following points discussed on day of deposition that he could not recall on day of deposition taken by Defendants" (*id*. at 34) and provides six such "points" (*id*. at 34-37).

### Defendants' Reply

Defendants contend Plaintiff has not identified any material dispute of fact. They assert

1    Plaintiff's placement in ASU served a legitimate penological goal because Plaintiff's visitor,

2    Arleta Brigham, brought marijuana onto prison premises on March 10, 2019, and had visited

3    Plaintiff at least 69 times. Those circumstances amount to a reasonable basis for suspecting

4    Plaintiff was involved in a conspiracy to introduce drugs into the prison and the investigation that

5    followed. Defendants further contend Plaintiff failed to raise a disputed issue of material fact as to

6    whether Defendants Hall and Isais could be responsible for his placement in ASU.

7         Defendants allege that Plaintiff's declaration in support of his opposition is a sham

8    affidavit. Defendants contend Plaintiff failed to raise a disputed issue of material fact as to

9    whether Defendants acted with retaliatory motive, the reason for his placement in ASU, or that he

10   suffered actual harm. Defendants note that Plaintiff's Exhibit D is not authenticated.

11                    <u>Summary of Defendants' Supporting Declarations</u>

12        *Declaration of B. Hancock* (Doc. 33-1)

13        Hancock's declaration concerns Arleta Brigham and visitation, CDCR employee A.

14   Scaife, and a difference or distinction between SOMS records and ERMS records.

15        *Declaration of C. Mascorro* (Doc. 33-2)

16        Registered Nurse Mascorro has no independent recollection of Plaintiff and never

17   provided Plaintiff with a declaration.

18        *Declaration of E. Anderson* (Doc. 33-3)

19        Anderson is the litigation coordinator for the Office of Legal Affairs at CDCR

20   headquarters and has access to CDCR personnel records. A search of those records reveals A.

21   Scaife was never employed at Kern Valley State Prison and instead worked at California State

22   Prison, Corcoran, before he retired in 2017.

23        *Declaration of H. Carrillo* (Doc. 33-4)

24        Correctional Officer Carrillo is a named defendant in 1:18-cv-00968-JLT-BAM. He is

25   familiar with Plaintiff's claim that Carrillo provided him a declaration, but Carrillo never did so.

26        *Declaration of J. Garcia* (Doc. 33-5)

27        Correctional Sergeant Garcia was informed by Visiting Sergeant Herrera that Arleta

28   Brigham was being detained in visitor processing and that staff had smelled a strong odor of

                                            17

1   marijuana on her person. Garcia was advised that Brigham had relinquished a bindle of plastic

2   and clear tape containing a green leafy substance found in her bra following a body search. Garcia

3   and Herrera conducted a search of Brigham's vehicle and found a cellular phone attached to the

4   dash, cigarette rolling papers, a clear plastic bag containing a green leafy substance, a package of

5   tobacco cigarettes, a package of Swisher Sweets Cigarillos containing one cigarette of a green

6   leafy substance suspected of being marijuana, a sealable pouch containing a green leafy

7   substance, and a roll of clear tape. Garcia advised Brigham of her *Miranda* rights.

8          After waiving her rights, Brigham stated she must have forgotten about the bindle of

9   marijuana found on her and she was not aware of contraband in her vehicle. When asked if that

10  incident was the first time Brigham had attempted to bring contraband into the facility, Brigham

11  stated it was. The bindle found on Brigham's person weighed 1.1 grams, and the suspected

12  marijuana found in Brigham's vehicle weighed 0.6 grams, 2.7 grams, and 0.9 grams.  Later field

13  kit and laboratory testing yielded positive results for marijuana. The incident was assigned

14  Incident Log No. KVSP-VIS-19-03-0212 and includes Garcia's report as reflected in Exhibit A.

15         *Declaration of J. Hernandez* (Doc. 33-6)

16         Correctional Lieutenant Hernandez interviewed T. Hall as a part of his investigation

17  concerning appeal log number KVSP-O-19-1065. Hernandez did not falsify the first level

18  response and never told Plaintiff he had been unlawfully placed in ASU and that his legal

19  material was confiscated. Hernandez never told Plaintiff that Defendants Hall and Isais were

20  responsible for placing Plaintiff in ASU or for confiscating his legal materials. Hernandez states

21  that as correctional officers, Hall and Isais could not have been responsible for placing Plaintiff in

22  ASU because only those with a rank of lieutenant or higher have the necessary authority.

23         *Declaration of J. Neighbors* (Doc. 33-7)

24         Correctional Lieutenant Neighbors has no independent recollection of Plaintiff and has

25  never provided a declaration to any inmate.

26         *Declaration of Jason Torres* (Doc. 33-8)

27         Torres took Plaintiff's deposition on May 3, 2023. Plaintiff claimed not to remember or

28  have an independent recollection of events and had to speculate an answer, approximately 41

times. Plaintiff answered 14 questions by reading directly from or paraphrasing his first amended complaint or other case-related documents. Torres was unable to contact M. Borunda and Christina McPheeters to discuss Plaintiff's claims that they provided him with a declaration.

*Declaration of M. Lozano* (Doc. 33-9)

Special Agent Lozano with the Office of Internal Affairs previously worked at Kern Valley State Prison. Lozano has no independent recollection of Plaintiff and has never provided a declaration to an inmate.

*Declaration of R. Kaur* (Doc. 33-10)

Licensed Vocational Nurse Kaur has no independent recollection of Plaintiff and has never provided him with a declaration.

*Declaration of V. Benavides* (Doc. 33-11)

Correctional Officer Benavides is a named defendant in 1:18-cv-00968-JLT-BAM. Benavides is familiar with Plaintiff's claim that he provided Plaintiff with a declaration but did not do so.

*Declaration of W. Hammer* (Doc. 33-12)

Correctional Captain Hammer has no independent recollection of Plaintiff. Hammer states inmates were never placed in ASU or STRH as a form of retaliation, nor was any cell designated or set aside to punish inmates for filing civil lawsuit. Hammer has never told an inmate that he was being placed in ASU or STRH as punishment for filing a lawsuit and has never caused an inmate to be housed in ASU or STRH as retaliation for an inmate exercising his constitutional rights. Hammer has never given Plaintiff or any other inmate a declaration.

**VII.    DISCUSSION[4]**

Defendants have met their initial burden on summary judgment of informing the Court of the basis for the motion and identifying admissible evidence to demonstrate the absence of a genuine issue of material fact. *Oracle Corp.*, 627 F.3d at 387; Fed. R. Civ. P. 56(c)(1)(A), (B).

---

[4] In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.

1   Because Defendants have met their initial burden, the burden shifts to Plaintiff. *Matsushita*, 475

2   U.S. at 586-87. Neither Plaintiff's opposition, nor his sworn declaration or exhibits meet his

3   burden on summary judgment because Plaintiff has failed to "show more than the mere scintilla

4   of evidence" required to establish a genuine issue of material facts exists. *Oracle Corp.*, 627 F.3d

5   at 387 (citing *Celotex Corp.*, 477 U.S. at 252).

6   **A.  Adverse Action: Unlawful Placement in ASU**

7   Plaintiff alleges Defendants Hall and Isais unlawfully placed him in ASU in retaliation for

8   filing an earlier civil rights lawsuit. Defendants state that the undisputed facts show neither

9   Defendant Hall nor Defendant Isais were responsible for that action, they did not take such action

10   and did not have the authority to do so.  *See* UDF 44; Doc. 33-6 at 2, ¶ 6.  Plaintiff fails to meet

11   his burden of establishing a material dispute of fact that Defendants Hall and Isais placed him in

12   ASU.

13   In response to UDF 44, Plaintiff admitted that Defendants "state they had no power to

14   have Plaintiff transferred into ASU," but denies "that Defendants declarations are true and it is

15   perjury." (Doc. 27 at 19.) In support that assertion, Plaintiff points to his Exhibit "D2," an

16   Inmate/Parolee Request for Interview, Item or Service, CDCR 22 form. (*See* Doc. 27 at 54[5] &

17   Doc. 31 at 3.) Plaintiff completed and signed the from on April 16, 2019, requesting as follows:

18
19
20
21
22
>   Upon my return to B-2 from ASU I asked B-2 floor officers about
>   my missing legal property. On or about 3/15/19 3rd watch officer c/o
>   Jorgenson was passing out general mail when I asked him about my
>   missing legal property at which time with my general mail he passed
>   me a copy of my (1083) property inventory slip that was blank where
>   inventory staffs names should've been and had a signature that I told
>   c/o Jorgenson that did not belong to me indicating that I was in
>   agreement with the account of my property. If anything I'm stating
>   isn't accurate please indicate and correct it to your best recollection.

23   (Doc. 31 at 3.) The staff response portion of the form was prepared and signed by Jorgenson on

24   April 17, 2019, and states: "The above statement is accurate, to the best of my recollection." (*Id.*)

25   The document simply confirms that (1) Plaintiff asked about missing legal property; (2)

26

27   _____

   [5] The document submitted with this filing is too light to be read. Thus, the Court directed Plaintiff to re-file
   the exhibit. The legible version was submitted by Plaintiff in his October 23, 2023, filing. Defendants also
28   provided this document in support of their motion. (*See* Doc. 23-2 at 36 [Hancock Decl., Exhibit E].)

1  Jorgenson provided Plaintiff with a copy of a property inventory slip, or Form 1083, that did not

2  include staff names while passing out general mail in the B-2 facility; and (3) Plaintiff told

3  Jorgenson the form did not accurately include Plaintiff's signature agreeing to the inventory.

4  Nothing in this document establishes that Defendants Hall and Isais were responsible for having

5  Plaintiff placed in ASU. Nor does this document establish that Defendants' declarations amount

6  to perjury. Plaintiff's belief that his Exhibit D2 proves that Defendants Hall and Isais had the

7  authority to place Plaintiff in ASU is mistaken.

8      Plaintiff offers no evidence to support his claim that Defendants Hall and Isais took

9  adverse action by placing him in administrative segregation in retaliation for having filed an

10  earlier suit. Plaintiff's Exhibit D2 does not overcome the declarations of Hall and Isais that they

11  did not have the authority to do so, nor does it refute the Defendants' exhibit indicating Plaintiff's

12  ASU placement occurred at the direction of Lieutenant N. Montanez, on March 10, 2019. (*See*

13  Doc. 23-2, Ex. D; *see also* Doc. 33, ¶ 6 ["Only officers with a rank of Correctional Lieutenant or

14  higher have that authority"].) In sum, Plaintiff has failed to meet his burden of proving

15  Defendants Hall and Isais unlawfully placed him in the ASU. *Matsushita*, 475 U.S. at 587.

16          **B.  Adverse Action: Confiscation of Legal Materials**

17      Plaintiff alleges that Defendants Hall and Isais confiscated his legal materials in retaliation

18  for filing an earlier civil rights lawsuit. Defendants assert the undisputed facts show Plaintiff's

19  property was inventoried according to CDCR Department Operations Manual provisions. *See*

20  UDF No. 17, 19, 20, 21, 22, 27, 36, 39, 40, 42, 43. In response to UDF 17, Plaintiff admits DOM

21  provisions 540303.13.2 and 540303.6 are the procedures to be followed when an inmate is placed

22  in ASU. (*See* Doc. 27 at 9-10.) Plaintiff denies "the procedures were followed" and states he "has

23  no documentary evidence that reflects that." (*Id*.)

24      Plaintiff is required to tender evidence in the form of affidavits, and/or admissible

25  discovery material, in support of its contention that the dispute exists or shows that the materials

26  cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c);

27  *Matsushita*, 475 U.S. at 586 n.11. Thus, to the extent Plaintiff asserts the DOM provisions were

28  not followed, he fails to meet his burden of producing such evidence.

21

In response to UDF No. 19 that "[u]sually, within 24 hours of notification of the inmate being retained elsewhere, the property will be inventoried, packaged, and placed in a secure location, Plaintiff states: "(P) denys [sic] that there's any documentary evidence that after (P) was being retained elsewhere his property was packaged and placed in a secure location. See D2." (Doc. 27 at 10.) Plaintiff's Exhibit D2 does not support his assertion that his legal property was not packaged and placed in a secure location. As noted above, the exhibit confirms that (1) Plaintiff asked about missing legal property; (2) Jorgenson provided Plaintiff with a copy of a property inventory slip, or Form 1083, that did not include staff names while passing out general mail in the B-2 facility; and (3) Plaintiff told Jorgenson the form did not accurately include Plaintiff's signature agreeing to the inventory. Nothing in this document establishes Defendants Hall and Isais confiscated his legal materials. Plaintiff does not establish a dispute material fact in this regard and also fails to establish a genuine dispute of material facts concerning UDF Nos. 20, 21 and 22.

In response to UDF No. 27, Inmates are allowed to keep in their cell legal documents from active cases, Plaintiff responded as follows:

> (P) admits procedures must be followed by correctional staff which allows inmates to keep in their cell legal documents from active cases, (P) denys [sic] correctional staff on 3/10/2019 day of unlawful placement into ASU allowed (P) that right or followed those procedures. (P) has documentary evidence that reflects that.

(Doc. 27 at 13.) Plaintiff fails to identify what "documentary evidence" supports his response. Even assuming Plaintiff intended to reference his Exhibit D2, as previously indicated, this document does not support Plaintiff's position.

In response to UDF No. 36, The third-level response found KVSP staff were fully compliant with Title 15 and that there was no liability on the institution's part for any lost property, Plaintiff states:

> (P) admits third level response found KVSP staff were fully compliant with Title 15 and that no liability on the institutions part of my lost property, (P) denys [sic] that third level response including second level responses full record wherein interview of (P) by witness R. Velasco provided additional supporting evidence that witness R. Velasco omitted from the record and third level response did not include which violated (P) due process to a complete and fair

decision regarding the allegation of his appeal KVSP #0-19-01065.
<u>See</u> Exhibit D2.

(Doc. 27 at 16-17.)

Plaintiff's Exhibit D2 confirms that (1) Plaintiff asked about missing legal property; (2) Jorgenson provided Plaintiff with a copy of a property inventory slip, or Form 1083, that did not include staff names while passing out general mail in the B-2 facility; and (3) Plaintiff told Jorgenson the form did not accurately include Plaintiff's signature agreeing to the inventory. Nothing about this document establishes that Defendants Hall and Isais confiscated his legal materials. *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) ("[A] mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.' Summary judgment may be granted if 'the evidence is merely colorable ... or is not significantly probative'"). To the extent Plaintiff alleges Velasco omitted information in violation of his due process rights, Plaintiff's due process rights are not at issue in this action; the omission of that information does not create a genuine issue of material dispute here.

In response to UDF No. 39, Plaintiff agrees that Defendants' declaration states "they always properly document the inmate's property on the appropriate Form 1083, [but] (P) denys [sic] that Defendants followed these procedures in his situation on 3/10/2019 and (P) has documentary evidence that reflects that. See Exhibit D2." (Doc. 27 at 17-18.) As previously explained, Exhibit D2 does not establish that Defendants confiscated Plaintiff's legal materials. It simply confirms that Plaintiff alleged his legal property was missing and that he questioned the content of the Form 1083 provided to him by Jorgenson. Making an allegation does not equate to producing evidence to support such an allegation and it does not create a material dispute of fact.

In response to UDF No. 40, Defendants Hall and Isais have never forged an inmate's signature on a 1083 form, Plaintiff responded as follows:

> (P) admits according to Defendants declarations they both state they never forged a 1083 Form, (P) denys [sic] that Defendants are declaring the truth and are instead perjuring themselves, (P) has

documentary evidence that reflects that. See Exhibit D2.

(Doc. 27 at 18.) Again, Plaintiff's Exhibit D2 simply confirms that (1) Plaintiff asked about missing legal property; (2) Jorgenson provided Plaintiff with a copy of a property inventory slip, or Form 1083, that did not include staff names while passing out general mail in the B-2 facility; and (3) Plaintiff told Jorgenson the form did not accurately include Plaintiff's signature agreeing to the inventory. Plaintiff *telling* Jorgenson that his signature did not appear on the Form 1083 provided to him by Jorgenson *does not establish* that Defendants Hall and Isais forged Plaintiff's signature and that their declarations are false. At best, that evidence amounts to "some metaphysical doubt" but is insufficient to establish a "'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. The CDCR Form 1083 at issue is included as a part of B. Hancock's Declaration in support of Defendants' motion. (*See* Doc. 23-2 at 34[6], 35[7] [part of Exhibit E].) A review of the document reveals that under the heading "Miscellaneous Items," the box associated with "Legal Material" is not checked and a signature appears in the bottom right-hand corner. (*Id*. at 34, 35.) Even assuming there is a genuine dispute concerning whether Plaintiff signed Form 1083, Plaintiff fails to establish a genuine issue of material fact concerning the essential elements of his claim. *Celotex*, 477 U.S. at 322.  Plaintiff's reliance on his Exhibit D2 in response to UDF Nos. 42 and 43 is also unpersuasive because Exhibit D2 does not establish Hall or Isais confiscated legal property in retaliation for an inmate filing a lawsuit.

To the extent Plaintiff challenges purported discrepancies between the documents maintained in SOMS and the documents maintained in ERMS, his conclusory assertions do not create a genuine dispute of material fact. Defendants' evidence explains the documents maintained in SOMS "contain[] primarily computerized records" whereas those maintained in the ERMS system "contain[] scans of printed documents, which may have handwritten notes, signatures, etc." (*See* Doc. 33-1, ¶ 8.)

In short, Plaintiff fails to meet his burden of establishing that Defendants Hall and Isais

---

[6] This copy of the form has not been completed in the bottom right-hand section titled "Property Inventoried by: …"

[7] This copy of the form has been completed in the bottom right-hand section titled "Property Inventoried by:" and includes the entry "C/O Hall, C/O Isais."

1   took any adverse action against him.

2              **C.  Causation: Because of the Protected Activity**

3         Defendants contend that even if Plaintiff's assertion that his legal materials were

4   confiscated and not returned is accepted as true, there is no evidence that either Hall or Isais knew

5   of Plaintiff's previous lawsuit, case number 1:18-cv-00968, to establish Defendants acted with

6   retaliatory motivation. (Doc. 23 at 15-16.)

7         UDF No. 41 states: "Neither Defendant had any knowledge in March of 2019 of Plaintiff

8   civil lawsuit, case no. 1:18-cv-00968," supported by the declarations of Defendants Hall and

9   Isais. Plaintiff "admits according to Defendants declaration both Defendants state they had 'no'

10  knowledge in March 2019 of (P) civil lawsuit case no. 1:18-cv-00968." (Doc. 27 at 18.) Plaintiff

11  states he "denys [sic] that those statements are true and instead Defendants are perjuring

12  themselves, (P) has documentary evidence that reflects that. See Exhibit D2." (*Id*.) As noted

13  above, Plaintiff's Exhibit D2 does not establish that either Defendant has made a false statement.

14  That exhibit simply confirms that (1) Plaintiff asked about missing legal property; (2) Jorgenson

15  provided Plaintiff with a copy of a property inventory slip, or Form 1083, that did not include

16  staff names while passing out general mail in the B-2 facility; and (3) Plaintiff told Jorgenson the

17  form did not accurately include Plaintiff's signature agreeing to the inventory. The exhibit is

18  neither direct nor circumstantial evidence of an alleged retaliatory motive and is mere

19  speculation. *McCollum,* 647 F.3d at 882–83; *Wood*, 753 F.3d at 905. Plaintiff has not shown that

20  his protected activity of filing case number 1:18-cv-00968 was a "substantial" or "motivating"

21  factor behind Defendants Hall and Isais's conduct of March 10, 2019. *Brodheim*, 584 F.3d at

22  1269, 1271.

23        A review of the docket and the filings in case number 1:18-cv-00968 reveals that Plaintiff

24  filed his original complaint on July 18, 2018. The Court issued its first screening order on June 7,

25  2019, about three months after the March 10, 2019, incident. The Court did not direct service of

26  process until May 26, 2020, and the named defendants in case number 1:18-cv-00968, Sandoval,

27  Benavides, Carrillo and Spiedell, were not served with Plaintiff's first amended complaint until

28  more than a year later. There is no evidence, other than Plaintiff's self-serving declaration, that

25

1   Hall or Isaias were even aware Plaintiff had initiated litigation against their fellow KVSP

2   employees. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as

3   amended (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any

4   supporting evidence, is insufficient to create a genuine issue of material fact"). The Court must

5   draw all reasonable inferences in favor of the opposing party, but it is not required to accept a

6   factual predicate from which a reasonable inference cannot be drawn. *Richards*, 602 F. Supp. at

7   1244-45. Plaintiff offers nothing more than mere speculation that Hall and Isias took adverse

8   action against him because of his protected activity of having filed an earlier lawsuit.

9        Next, Plaintiff includes as part of his declaration an "expansion" of his deposition

10   testimony that he "recalls plainly and with particularity the following points discussed on day of

11   deposition that he could not recall on day of deposition." (*See* Doc. 27 at 34, ¶ 17.) One of those

12   "points" involves Plaintiff being asked by defense counsel whether he "recalled it was Defendant

13   Hall who (P) had the conversation with regarding retaliation after (P) placement in ASU by

14   Defendants; Defendant Hall coming into program and made statement is Facility Z Programing

15   ASU #1, Cell #101." (*Id.*, ¶ 18.)

16                 1.  Application of the Sham Affidavit Rule

17        Defendants contend Plaintiff's declaration in support of his opposition to their motion for

18   summary judgment should be disregarded and stricken because it is a sham. (Doc. 33 at 8-9.)

19   During his deposition of May 3, 2023, Plaintiff replied on approximately 41 occasions that he did

20   not remember events, had no independent recollection of events, and was only able to speculate in

21   response to questions. (*Id*. at 9.) In response to approximately 14 questions, Plaintiff read directly

22   from or paraphrased his first amended complaint and other case related documents. (*Id*.)

23   Defendants contend that in his opposition, Plaintiff "alleges several new facts … and provides no

24   reasonable explanation for why they have not previously been alleged. (*Id*.)

25        The Ninth Circuit has held as follows:

26               The general rule in the Ninth Circuit is that a party cannot create an
                    issue of fact by an affidavit contradicting his prior deposition
27               testimony. This sham affidavit rule prevents a party who has been
                    examined at length on deposition from rais[ing] an issue of fact
28               simply by submitting an affidavit contradicting his own prior

1

2

3

4

5

6

testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.... But the sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment. In order to trigger the sham affidavit rule, the district court must make a factual determination that the contradiction is a sham, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit."

7

8

*Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (internal citations & quotations omitted, alteration in original).

9

10

11

12

13

14

15

A declaration may be considered "to be a sham when it contains facts that the affiant previously testified he could not remember." *Yeager*, 693 F.3d. at 1080. However, "newly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham.... [T]he non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Id.* at 1081.

16

17

18

19

20

21

22

23

24

25

26

27

The Court has reviewed the entire deposition transcript.[8] During his deposition, Plaintiff testified he did not have an independent recollection of the conversation with Hall and Isais. (Randolph Depo., at 25.) Plaintiff relied on assertions made in his first amended complaint and the first level response to his grievance when asked about a conversation with individuals who told Plaintiff his legal materials would be confiscated in reprisal for his having filed a civil rights lawsuit. (*See* Randolph Depo., at 21-24.) Plaintiff testified that his reference to an "unknown staff member" in his first amended complaint was a reference to both Defendants Hall and Isais. When asked whether he recalled having had a conversation with Defendant Hall when he was in the ASU, Plaintiff replied, "That would be speculative at this point right here. But from the records that I've written and kept, it states that, that at the time that Officer Hall - - the unknown staff that is identified as Officer Hall." (*Id.* at 24.) When asked later, "So was it Officer Hall who came in, or was it Officer Hall and Isais," Plaintiff testified that according to his "complaint, 'staff

28

---

[8] The Court acknowledged receipt of the lodged deposition transcript on September 14, 2023. (*See* Doc. 24.)

member' is in the singular, and it would be speculative at this point to say it was both." (*Id.* at 25.) Plaintiff testified he was "just going based on what it says in the complaint." (*Id.*) In contrast, Plaintiff's opposition to the motion for summary judgment now states Hall and Isais explained to him that his property had been "permanently confiscated due to his legal activities for filing excessive force claims made against B Facility correctional staff." (Doc. 27 at 25, ¶ 2.)

During his deposition, Plaintiff was asked "do you recall having a conversation with Officer Hall when you were in the ad seg holding cell?" (Randolph Depo., at 24:15-17.) Plaintiff testified "[t]hat would be speculative at this point right here," before relying on his notes or the complaint. (*Id.*) In his opposition, Plaintiff states Hall came "into program and made statement [in] Facility Z programing ASU #1, Cell #101." (Doc. 27 at 34, ¶ 18.)

The Court finds Plaintiff's declaration is a sham affidavit because it involves "newly remembered" information offered only after Plaintiff testified at this deposition that he did not remember these events. Thus, the declaration should be excluded. *Yeager*, 693 F.3d. at 1080; *see also Van Asdale v. International Game Technology*, 577 F.3d 989, 999-1000 (9th Cir. 2009).

Defendants also contend Plaintiff's "declaration alleges brand new facts" about what Nurse McPheeters and Captain Hammer told him while he was housed in the ASU. (Doc. 33 at 15-16.) Regarding McPheeters, Defendants contend Plaintiff's statements are inadmissible hearsay and there is no declaration from McPheeters. (*Id.* at 16.) Defendants assert Plaintiff simply offers a page from SOMS indicating that McPheeters conducted a mental health screening in ASU; that document does not support the allegations in Plaintiff's declaration that McPheeters told Plaintiff that cell number 101 was used as punishment because Plaintiff filed the earlier excessive force lawsuit. (*Id.* at 16.)

Defendants similarly object to the statements Plaintiff attributes to Hammer based on hearsay. (*Id.*) Plaintiff relies on the document to support his claim that Hammer told Plaintiff he was a threat to safety and security because he filed an excessive force claim. However, the document shows that the circumstances surrounding Arleta Brigham's attempt to bring drugs onto prison grounds supported Plaintiff's placement in ASU because Plaintiff presented "'an immediate threat to the safety of self and others.'" (*Id.* at 17.)

By including the statements attributable to McPheeters and Hammer in his opposition, Plaintiff presents new facts that contradict his first amended complaint and his deposition testimony. The first amended complaint makes no reference to McPheeters or Hammer, and Plaintiff did not testify regarding either McPheeters or Hammer at his deposition.[9] Plaintiff's declaration does not involve "newly discovered evidence afford[ing] no basis for excluding an opposition affidavit." *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995). Plaintiff offers it at this late stage of the proceeding without any explanation for the delayed and contradictory statements. *Id.*; *see also Fosselman v. Dimmer*, No. 1:12-cv-01302-DAD-SAB (PC), 2017 WL 1254685, at *15-16 (E.D. Cal. Feb. 17, 2017) (declining to consider under the sham affidavit rule the statement attributed to Dimmer in Plaintiff's submitted in support of his motion for summary judgment and opposition), findings and recommendations adopted in full March 23, 2017; *Buckhalter v. Torres*, No. 2:17-cv-02072-KJM AC, 2019 WL 3714576, at *2 (E.D. Cal. Aug. 7, 2019) (order striking the plaintiff's declaration and stating "the timing of plaintiff's declaration, which was signed on the day on which plaintiff filed his opposition to defendants' summary judgment motion, suggests plaintiff authored the declaration for the purpose of creating, or least bolstering, a dispute of material fact").

Here, Plaintiff's assertions regarding statements purportedly made by McPheeters and Hammer were made for the purpose of creating a dispute of material fact and "greatly diminish the utility of summary judgment." *Yeager*, 693 F.3d. at 1080. Accordingly, Plaintiff's assertions concerning McPheeters and Hammer will be disregarded  In sum, Plaintiff has failed to meet his burden of establishing a material dispute that Hall and Isais's actions involved any retaliatory motive.

---

[9] Hammer's declaration in support of Defendants' reply to Plaintiff's opposition states he has no independent recollection of Plaintiff, that inmates were never placed in the ASU or the STRH as a form of retaliation, that cell number 101 was used for intake and never designated or set aside for the purpose of punishing an inmate who filed a civil lawsuit, that Hammer has never told an inmate he was being placed in the ASU or STRH as punishment for filing a lawsuit, Hammer has never caused an inmate to be housed in ASU or STRH in retaliation for the inmate exercising a constitutional right, and Hammer has never provided a declaration to Plaintiff or any other inmate. (*See* Doc. 33-12.) Defense counsel Torres's declaration indicates he unsuccessfully attempted to contact Christina McPheeters to discuss Plaintiff's allegations. (*See* Doc. 33-8 at 2, ¶ 6.)

1

**D.  Legitimate Penological Interests**

2       Defendants contend Plaintiff's placement in ASU and the inventorying of his property

3 served legitimate penological interests. (Doc. 23 at 14-15.) Plaintiff was placed in ASU because

4 he was suspected of conspiring to introduce a controlled substance into the prison when his visitor

5 was caught with marijuana on prison grounds. (*Id*. at 14.) As the ASU placement notice indicates,

6 the placement maintained institutional security and prevented Plaintiff from jeopardizing the

7 investigation because Plaintiff presented a threat to others. (*Id*. at 14-15.) Defendants' actions also

8 served a legitimate penological purpose in following the DOM requirements for the protection of

9 inmate property during an inmate's ASU placement. (*Id*. at 15.)

10       Defendants have submitted evidence that Arleta Brigham possessed marijuana when she

11 arrived at the prison on March 10, 2019, to visit Plaintiff. UDF Nos. 1, 3. As a result, Plaintiff

12 was placed in ASU on suspicion of conspiracy to introduce a controlled substance into the prison

13 for distribution. UDF No. 4. The burden then shifts to Plaintiff to provide evidence to establish a

14 dispute of material fact. Plaintiff fails to meet his burden.

15       In response to UDF No. 3, Plaintiff contends KVSP officials "staged evidence and

16 falsified reports and documents where no evidence of alleged presumptive test or substances has

17 been produced or consistent reporting demonstrates." (Doc. 27 at 5-6.) Plaintiff refers to the

18 Jorgenson statement in support of his contention in Exhibit D2. As noted above, Plaintiff's

19 Exhibit D2 simply confirms that (1) Plaintiff asked about missing legal property; (2) Jorgenson

20 provided Plaintiff with a copy of a property inventory slip, or Form 1083, that did not include

21 staff names while passing out general mail in the B-2 facility; and (3) Plaintiff told Jorgenson the

22 form did not accurately include Plaintiff's signature agreeing to the inventory. Plaintiff's evidence

23 does not establish a genuine dispute of material fact regarding the reason for his placement in

24 ASU.

25       Defendants' evidence includes the ASU Placement Notice dated March 10, 2019, with

26 reasons for the placement and a description of the circumstances. (*See* Doc. 23-2 at 12.)

27 Plaintiff's declaration and his assertions regarding the purported impossibility of finding "a total

28 package weight of 2.0 grams (TPW) and locat[ing] 3.3 grams net weight from that package" (*see*

Doc. 27 at 28) does not create a material dispute as to any legitimate penological interest. Nor does Brigham's declaration that no marijuana or contraband was found *on her person* during the search of March 10, 2019, amount to a genuine material dispute. (Doc. 27 at 22, ¶ 2.)

While Brigham denied bringing marijuana "into a prison or to a prisoner," her declaration acknowledges she knew a marijuana cigarette was in her vehicle, and she does not deny that bags of loose marijuana were found in her vehicle. (*Id*., ¶¶ 4-5) Thus, regardless of any purported weight discrepancy and Brigham's denial that marijuana was found on her person during an unclothed body search, Brigham possessed a controlled substance on prison grounds because marijuana was found in her vehicle during her scheduled visit to Plaintiff. *See, e.g*., *Cates v. Stroud*, 976 F.3d 972, 979 (9th Cir. 2020) ("'[p]rison officials ... have a strong interest in preventing visitors from smuggling drugs into the prison'" and "[c]oncerns about smuggling drugs and other contraband … into the facility may justify a variety of security screening measures"); *United States v. Prevo*, 435 F.3d 1343, 1346-47 (11th Cir. 2006) (in Fourth Amendment context, holding that keeping contraband out of prison was critical security measure served by unscheduled searches of cars in visitor parking lot); *Romo v. Champion*, 46 F.3d 1013, 1016 (10th Cir. 1995) (in Fourth Amendment context, holding the stop of a vehicle at a roadblock prior to entering the prison to facilitate sweep of car and occupants for drugs was reasonable and tailored to keep drugs out of prisons and maintain prison security).

There is no evidence to support Plaintiff's claim that the report concerning Brigham was fabricated. Nor is there any evidence to indicate Defendants Hall or Isaias were involved in the investigation concerning Brigham and/or Plaintiff's possible involvement in drug distribution. The undisputed facts establish that when Plaintiff's visitor Arleta Brigham was found to be in possession of marijuana on prison grounds on March 10, 2019, prison officials began an investigation to determine whether Plaintiff conspired to introduce drugs into the prison for distribution, and Plaintiff was placed in the ASU on that same date. Prison officials have a legitimate penological reason for keeping drugs out of prison. In short, Plaintiff has failed to establish a genuine issue of material fact. *See Celotex*, 477 U.S. at 322-23.

Inventorying of an inmate's property when the inmate is placed in ASU serves a

legitimate penological interest. UDF Nos. 17-25. Plaintiff admits the DOM provides for inventorying of an inmate's property in those circumstances, but denies those procedures were followed. (Doc. 27 at 9-12.) Plaintiff again relies on his Exhibit D2 as evidence in support of his argument. Jorgenson confirmed that Plaintiff asked him about missing legal property, provided Plaintiff with a copy of a property inventory slip that did not include staff names while passing out general mail in the B-2 facility, and Plaintiff told Jorgenson the form did not accurately include his signature agreeing to the inventory. The document is not evidence that inventorying an inmate's property does not serve a legitimate penological interest.  In short, Plaintiff has failed to establish a dispute of material fact.  *See Celotex*, 477 U.S. at 322-23.

### E.  Actual Harm

Plaintiff's first amended complaint makes no reference to photographs or declarations of correctional officers. (*See* Doc. 12.) And when asked what legal materials were missing during his deposition, Plaintiff repeatedly indicated he did not recall specifics. (Randolph Depo, at 41-42.) Plaintiff offers no explanation for his recent ability to recall facts that he could not recall at his deposition. This information is not newly discovered as Plaintiff should have known that these specific documents and the photographs were missing when he filed his complaint. *Yeager*, 693 F.3d. at 1080; *Messick*, 62 F.3d at 1231. This suggests Plaintiff authored his declaration for the purpose of creating a dispute of material fact. *Buckhalter*, 2019 WL 3714576, at *2. This Court finds Plaintiff's declaration regarding dozens of photographs and declarations from correctional officers or staff to be a sham affidavit. *Yeager*, 693 F.3d. at 1080.  Finally, Plaintiff's assertions regarding purported contradictions in Hernandez's declarations concerning Plaintiff's appeal in KVSP-O-19-01065 involve mischaracterizations by Plaintiff and do not create a material dispute. (*See* Doc. 33 at 17-19.) *Anderson*, 477 U.S. at 248.

### F.  Summary of Findings

Defendants met their initial burden of proving the absence of a genuine issue of material fact. *Oracle Corp*., 627 F.3d at 387. The burden shifted to Plaintiff to produce evidence of a genuine issue of material fact, and he failed to do so. *Anderson*, 477 U.S. at 248. The evidence submitted by Plaintiff, including the affidavits submitted by Plaintiff and Arleta Brigham, does

1  not create a dispute of material fact requiring a jury to resolve the differing versions of truth at

2  trial. *Matsushita*, 475 U.S. at 587; *Wool*, 818 F.2d at 1436; *T.W. Elec. Svc.*, 809 F.2d at 631.

3  Plaintiff has shown only "some metaphysical doubt." *Matsushita*, 475 U.S. at 587. On this record,

4  a rational trier of fact would not find for Plaintiff on First Amendment retaliation claim against

5  Defendants Hall and Isais. *Id.*; *see also Rhodes*, 408 F.3d at 567-68; *Pratt*, 65 F.3d at 806;

6  *Brodheim*, 584 F.3d at 1269, 1271; *McCollum*, 647 F.3d at 882-83.

7  **VIII.   CONCLUSION AND RECOMMENDATIONS**

8      Based on the foregoing, the Court finds Defendants Hall and Isais are entitled to judgment

9  as a matter of law on Plaintiff's retaliation claims. Accordingly, this Court **RECOMMENDS** that

10  the Motion for Summary Judgment filed September 11, 2023 (Doc. 23) be **GRANTED** and this

11  action be dismissed.

12      These Findings and Recommendations will be submitted to the district judge assigned to

13  this case, pursuant to 28 U.S.C. § 636(b)(l). **<u>Within 14 days</u>** of the date of service of these

14  Findings and Recommendations, a party may file written objections with the Court. The

15  document should be captioned, "Objections to Magistrate Judge's Findings and

16  Recommendations." Failure to file objections within the specified time may result in waiver of

17  rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

18  *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

19

20  IT IS SO ORDERED.

21  Dated:   **July 25, 2024**                          */s/ Sheila K. Oberto*

22                                             UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28